UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **WARD E. JACKSON** | **CA NO. 3:13-CV-2723** |
| **VERSUS** | **JUDGE DONALD E. WALTER** |
| **WARDEN BURL CAIN** | **MAG. JUDGE KAREN L. HAYES** |

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

NOW INTO COURT, comes the State of Louisiana, through the undersigned Assistant District Attorney for the Sixth Judicial District, Tensas Parish, Louisiana, on behalf of the Attorney General for the State of Louisiana, Warden Burl Cain, and the District Attorney, who answers Petitioner's Petitioner for Writ of Habeas Corpus, as follows:

**I.**   **Exhaustion of State Remedies:**

Petitioner, Ward E. Jackson, appears to have exhausted all of his state court remedies in accordance with 28 U.S.C. § 2254(b).  A claim is exhausted once it has reached the highest court and a ruling has been issued.[1]  Federal courts will not consider on habeas corpus application by state prisoner claims which have not been raised in a state tribunal.  *U.S. ex rel. Hayden v. Zelker*, C.A.2 (N.Y.) 1974, 506 F.2d 1228.  *See, also, Redd v. State of La. ex rel. Henderson*, C.A. 5 (La.) 1973, 489 F.2d 766.  Petitioner was convicted of second degree murder on April 29, 2005 and sentenced to life in prison on June 14, 2005.[2]  On June 16, 2005, through his counsel Raymond Cannon, Petitioner filed a Motion to Appeal his conviction and sentence to the Second Circuit Court of Appeals.[3]  On July 12, 2005, attorney James E. Beal, was appointed to represent Petitioner

---

[1] See 28 U.S.C. § 2254(c).
[2] See State Court Record at pp. 992-1055..
[3] See Id at p. 156.

1

on appeal.[4] Petitioner's appeal cited only two (2) assignments of error.[5] In January 2006, Petitioner, without counsel, supplemental his appeal.[6] The Second Circuit affirmed Petitioner's conviction and sentence on April 12, 2006.[7] The Louisiana Supreme Court denied writs on December 15, 2006.[8]

On August 10, 2009, Petitioner filed an application for Post-Conviction Relief, which was deemed untimely.[9] Petitioner sought writs regarding the denial of post-conviction relief and the application was remanded for review of the timeliness of his application.[10] The Second Circuit ordered the application for post-conviction relief remanded and the Sixth Judicial District Court considered Petitioner's post-conviction relief application on the merits and denied it on September 26, 2012.[11] On February 27, 2015, the Louisiana Supreme Court denied writs on Petitioner's application for post-conviction relief.[12]

## II.     **Filing Deadlines:**

The federal Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one (1) year statute of limitations for filing a federal habeas corpus petition.[13] The time for filing a habeas petition runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.[14] That one (1) year period is tolled while a properly filed application for State post-conviction or other collateral review or

---

[4] See Id at p 163.
[5] See Id at p. 1063.
[6] See Id at p. 1088.
[7] See Id at p. 1096.
[8] See Id at p. 1660.
[9] See Id at p. 1261.
[10] See Id at p. 1611.
[11] See Id at p. 1730.
[12] See Record Doc. No. 14-1.
[13] 28 U.S.C. § 2244(d)(1).
[14] Id

claim is pending.[15] An application for post-conviction relief is filed timely if it is filed within two (2) years of the judgment of conviction and sentence becoming final.[16] Due to a delay in the review of Petitioner's post-conviction relief applications by the trial court, the Louisiana Supreme Court denied writs on Petitioner's application for post-conviction relief on February 27, 2015. Thus, Petitioner's habeas complaint, filed November 26, 2013, appears to be timely.

### III. Standard of Review:

28 U.S.C. § 2254(d)(2) states:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The findings of the trial court are entitled to a presumption of correctness. See *Carter v. Johnson,* 131 F.3d 452 (5th Cir. 12/12/97). The federal courts will not interfere by habeas corpus with a state in the administration of its criminal law unless fundamental rights specially secured by the United States Constitution are invaded. *Rogers v. Peck*, U.S.Vt.1905, 26 S.Ct. 87, 199 U.S. 425, 50 L.Ed. 256.

### IV. Law and Argument

    A. <u>The trial court did not err in ruling Detective Rash's notes were not discoverable as they were *work product.*</u>

In his first claim for relief, Petitioner alleges that the trial court erred by ruling that the State's case agent's, Detective Rash, notes were not discoverable as they were work product. Petitioner contends that the case agent's notes should have been subjected to an in camera

---

[15] 28U.S.C. § 2244(d)(2).
[16] La. C.Cr.P. 930.8

3

inspection, prior to the court's ruling, in order to determine whether the notes contained exculpatory material. More pointedly, Petitioner asserts that the case agent's notes contained statements Petitioner made from which Petitioner would have benefitted.

Petitioner's claim is governed by the following:

La. Code Crim. Proc. art. 716, which states, in pertinent part:

> "A. Upon written motion of the defendant, the court shall order the district attorney to disclose to the defendant, and to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
> B. Except as provided by Paragraph C of this Article, upon written motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature made by the defendant or any codefendant which the district attorney intends to offer in its case in chief at the trial, with the information as to when, where, and to whom such oral confession or statement was made.
> C. Upon written motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement made by the defendant or any codefendant which the state intends to offer in its case in chief at the trial, whether before or after arrest, in response to interrogation by any person then known to the defendant or the codefendant to be a law enforcement officer.
> D. Upon written motion of the defendant, the court shall order the district attorney to disclose to the defendant, and to permit or authorize the defendant to inspect and copy any written or recorded statements of any witness the state intends to call in its case in chief at the trial. For purposes of this Article: (1) "written or recorded statement of a witness" shall mean any audio or audio-video recording of an oral statement or interview of a witness, and any statement a witness writes or signs; (2) for the purposes of this Article, "trial" shall mean the phase of the case at which the state attempts to meet its burden as to guilt, and specifically does not extend to pretrial matters or hearings, or to the penalty phase in capital prosecutions. The state need not provide the defendant any written or recorded statement of its witnesses until immediately prior to the opening statement at trial;" and

La. Code Crim. Proc. art. 723A states:

> "Except as specifically provided in this Chapter, this Chapter does not authorize the discovery or inspection of reports, memoranda, notes, or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of any document, notes, or other

4

items which contain the mental impressions of any attorney for the state or any investigator working on behalf of such attorney."

Where defense had already received notice of statements made by defendant in presence of arresting officers, defendant was not deprived of his right to receive proper notice of his oral statements. LSA-C.Cr.P. art. 768; *State v. Hooks*, 421 So. 2d 880 (La. 1982). The State is not required to provide defendant with copy of investigator's notes taken during defendant's oral confession, where defendant was provided substance of oral confession in open court through investigator's testimony, nothing indicated omissions, there was not written summary, and trial court determined no exculpatory material existed. La. C.Cr.P. art. 716, subd. C; *State v. McKinnie*, 793 So. 2d 1272 (La. App. 2d Cir. 2001). The burden is on the defendant to show that he was prejudiced by the admission of any such confession or inculpatory statement. La. C.Cr. P. art. 768; *State v. Quimby*, Sup.1982, 419 So.2d 951.

The Louisiana Supreme Court has held that Louisiana Code of Criminal Procedure Article 723 represents a codification of the work product privilege. State v. Rey, 351 So.2d 489 (La.1977). <u>See also</u> State v. McBride, 773 So.2d 849 (La. App. 3 Cir. 11/15/00). Petitioner cites *McBride* as being the "exact scenario" presented in the case at bar. However, Petitioner is incorrect. In *McBride*, the defendant sought to introduce evidence of complaints by the defendant, against the victim, to the Rapides Parish District Attorney's Office. The *McBride* court opined that the information sought was not work product because it was not prepared in anticipation of litigation or trial.

Prior to the trial of this matter, the State provided Petitioner with a Notice of Defendant's Exculpatory and/or Inculpatory Statements, intended for use at trial, which

5

included statements made to Detective Rash.[17] At the trial of this matter, during the questioning of the officers involved in Petitioner's arrest, defense counsel, Raymond Cannon, objected to statements allegedly made by the accused.[18] Counsel's objection was also made in a motion to suppress; therefore, at that time, the Court decided to hear arguments regarding the admissibility of statements made by Petitioner, prior to the questioning of the rest of the officers involved.[19] Detective James Rash was called to testify as to the waiver of Petitioner's rights.[20] Detective Rash testified that Petitioner declined to make a statement on the record after having been Mirandized, but then volunteered to tell Detective Rash what happened between himself and victim.[21]

Detective Rash went on to testify that he made notes of the statements made to him by Petitioner.[22] Detective Rash stated that he dated his notes and provided a copy to the District Attorney, but he did not recall whether or not he signed the notes.[23] He further testified that these notes were made as his own work product and there is no requirement for him to make note of such non-recorded statements.[24] Petitioner's counsel then requested, without reference to any particular laws of the State of Louisiana, that a determination be made as to whether the notes made by Detective Rash were discoverable.[25] The trial judge ruled that notes of any oral statement or confession made to Detective Rash were work product and, therefore, not discoverable.[26]

---

[17] See State Record at p. 79.
[18] See Id at p. 585.
[19] Id at p. 590.
[20] Id at p. 591.
[21] Id at p. 595.
[22] Id at p. 596.
[23] Id at p. 597.
[24] Id at p. 599-600.
[25] Id at p. 603-604.
[26] Id at p. 604.

As required by Louisiana law, the State provided Petitioner with notice of its intent to introduce testimony of statements made by Petitioner to Detective Rash. Detective Rash was available for questioning at the time of the preliminary examination in this matter. Detective Rash testified that the he did not make a verbatim transcript of Petitioner's voluntary statement, but rather, made notes regarding Petitioner's statement for his own use. According to the pertinent discovery provisions, Detective Rash's notes were work product and were not discoverable. Moreover, the State offered independent evidence in support of the crime committed by Petitioner as well as multiple additional witnesses, other than Detective Rash. Therefore, there is no evidence that Petitioner was prejudiced by the introduction of the subject testimony and/or statements and there is no evidence that Petitioner would have been found innocent had this evidence been excluded. Accordingly, Petitioner's claim lacks merit and should be denied.

  B. <u>The trial court did not err in denying Petitioner a new trial.</u>

On or about June 7, 2005, Petitioner filed a Motion for New trial alleging seventeen (17) grounds for which new trial should be granted. Petitioner now contends that the Second Circuit did not address all of these grounds on appeal and that he has been greatly prejudiced by the denial of a new trial. Petitioner's appeal to Second Circuit including the following regarding his Motion for New Trial: 1. Admission of contradictory testimony of James Rash and exclusion of preliminary testimony of Calvin Brown; 2. Admissible hearsay statements of Calvin Brown; 3 Denial of continuance was prejudicial; and 4. Admission of perjured testimony of Calvin Brown. The Second Circuit addressed these assignments by addressing the issue of witness Calvin Brown's testimony.

Petitioner's habeas claim regarding his Motion for New Trial is largely based on the testimony of Calvin Brown. Petitioner also mentions the testimony of Hargis Stevenson, Detective Rash's case notes and a newly discovered witness. However, Petitioner presents no legal basis supporting his assertion that the trial court erred in denying a new trial.

La. Code Crim. Pro. art. 851 provides grounds for a new trial:

"A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence.
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."

Under statutory article governing motion for new trial, trial judge has wide discretion to determine weight of the evidence. *State v. Evans,* 27,750, 669 So.2d 719, (La. App. 2 Cir. 2/28/96), *writ denied* 675 So.2d 1119, 1996-0793 (La. 6/28/96). On motion for new trial based upon newly discovered evidence, defendant has burden to show that evidence could not have been discovered before or during trial through exercise of reasonable diligence. State v. Fuller, Sup.1982, 414 So.2d 306. On appeal, the court will not assess the credibility of witnesses or

reweigh evidence to overturn fact finder's determination of guilt. *State v. Ford*, 608 So. 2d 1058 (La. App. 1st Cir. 1992).

During preliminary examination, Mr. Calvin Brown, a witness called by defense counsel testified that he was present on the date in question and observed the victim, Mr. Haywood, walk up behind Petitioner and tell him he had no one to protect him now.[27] Mr. Brown testified that he saw Petitioner and the victim "get into it."[28] At the trial of the matter, when called by defense counsel, Mr. Brown stated that he did not actually see what happened on the date the crime was committed, but he previously testified, at the preliminary examination, as to the events he was told surrounded the altercation between Petitioner and the victim.[29] Mr. Brown went on to testify that he did not understand the proceedings at the time of the preliminary examination and that he did not understand that he was coached into committing perjury.[30]

Mr. Brown further admitted that he named the wrong victim in his original testimony provided at preliminary examination.[31] Another witness, DA investigator Jesse Esters, testified that Mr. Brown told him he was unaware of why he was called by defense to testify.[32] Defense witness Hargis Stevenson told a story of the victim, Gary Haywood, threatening Petitioner prior to the incident in question.[33] By referencing the testimony of these witnesses in his argument, it appears as though Petitioner is trying to show that the victim was the aggressor.

The overall picture painted by the aforementioned testimony is this: Mr. Brown, a witness for the defense, was originally coached into making statements inferring that the victim was the

---

[27] Id at p. 1217-1218.
[28] Id at p. 1218.
[29] Id at p. 891.
[30] Id at p. 898.
[31] Id at p. 900.
[32] Id at p. 661.
[33] Id at p. 903.

9

aggressor. Mr. Brown, once made aware, realized he had not understood the concept of testifying, based on his own knowledge, under oath. That was verified by the testimony of Mr. Ester, who understood that Mr. Brown had nothing to offer by way of testimony. So, the defense then attempted to show the victim as the aggressor by having Mr. Stevenson testify that the victim threatened Petitioner. Respondent can only interpret Petitioner's argument and reference to this testimony as an argument for self-defense. Petitioner has failed to make a showing of relevancy of the aforementioned testimony. He has not stated grounds for a new trial based on the admissibility of the witness testimony cited in his brief. Moreover, the determination of witness credibility is left to the jury to determine Petitioner's guilt.

Additionally, Petitioner has stated that a new witness exists. However, Petitioner does not make a showing of the relevancy of this witness's potential testimony. Petitioner has not proved that he was unable to produce this witness at trial. There is no evidence that Petitioner was prevented from calling this witness at trial of this matter. Thus, Petitioner has failed to state grounds upon which a new trial should have been granted. This claim should be denied accordingly.

  C. <u>Petitioner's counsel was not ineffective due to a conflict of interest.</u>

Petitioner argues that his trial counsel, Mr. Raymond Cannon, conducted his defense while also having a conflict of interest which should have prevented him from defending Petitioner. Petitioner claims that Mr. Cannon's prior representation of Mr. Dale Simpson, a witness for the State, created a conflict which prohibited Mr. Cannon from effectively questioning Mr. Simpson. Petitioner believes Mr. Simpson heard statements of the victim and that Mr. Cannon failed to question him regarding these statements.

When a defendant raises the issue of conflict of interest post-trial, the defendant must show he was actually prejudiced. *State v. Marshall*, 414 So.2d 684, 687–688 (La.1982), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982), *relying on Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) and *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State v. Edwards*, 430 So.2d 60, 62 (La.1983); *State v. Tart*, 672 So. 2d 116, 125 (La. 1996). "An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties." *State v. Carmouche*, 508 So.2d 792, 797 (La.1987).

The witness in question, Mr. Simpson, had prior felony convictions due to drug related crimes.[34] Mr. Simpson was called as a witness for the State and examined thoroughly by both the prosecution and defense. At no time was he questioned regarding his prior representation by Mr. Cannon.[35] The trial transcript does not show that defense counsel attempted to impeach Mr. Simpson or show that he was offered any leniency for a crime in exchange for his testimony.[36] The trial court addressed the conflict issue upon application of post-conviction relief and found that no conflict existed, noting prior representation by Mr. Cannon. Petitioner has not provided any evidence that his counsel, Mr. Cannon, was ever placed in a situation where his loyalty may be deemed questionable. Without evidence of actual prejudice, Petitioner is barred from claiming ineffective assistance of counsel based on this alleged conflict. Therefore, this claim should be denied.

---

[34] Id at p. 719.
[35] Id at p. 719 et seq.
[36] Id at p. 719

### D. The trial court did not err in denying Petitioner's Motion to Continue.

Petitioner alleges that his motion to continue his trial was erroneously denied because it resulted in his inability to rebut the autopsy report. Petitioner believes that had the trial court granted his continuance, the defense would have had the opportunity to learn that Dr. McCormick's report needed to be examined by an expert. Petitioner avers the defense was unable to prepare for Dr. McCormick's testimony.

A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor. La. Code Crim. Proc. Ann. art. 712. The decision to grant or deny a motion for continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb a trial court's determination absent a clear abuse of discretion. *State v. Ray*, 42,096, 961 So.2d 607, (La.App. 2 Cir. 6/27/07). Denial of defendant's motion for continuance based on discovery provided only three (3) days prior to trial was not abuse of discretion without a showing, by defendant, as to how he was prejudiced and that State's answers necessitated unforeseen preparation that required additional time. *State v. Sonnier*, (La. App. 3 Cir.1990) 558 So.2d 749.

Defense counsel filed a motion to continue on April 21, 2005 stating the defense had just received the autopsy report and needed additional time to prepare.[37] The trial of the matter was scheduled for April 25, 2005.[38] Defense counsel previously filed two motions for speedy trial, the latest of which was March 2005.[39] At the hearing on the motion for continuance, the prosecution argued that the defense was aware of all injuries sustained by the victim based on the fact that the defense was in possession of the victim's medical records. The State was not aware of the report

---

[37] Id at p. 112.
[38] Id at p. 205 et seq
[39] Id at p. 205.

12

until it was received and immediately disclosed it.[40] The trial court found that Petitioner was not in a position to seek a continuance because he was afforded all opportunities to prepare a defense, as he was provided discovery upon receipt by the State.[41] Petitioner has not provided any additional proof or evidence as to how he would have benefited from a continuance. Even more importantly, he never made a showing of how an expert or additional review of the autopsy report would have assisted him at trial to the extent that he has been prejudiced by the denial of a continuance. Without a showing of how he was prejudiced by this decision, Petitioner cannot succeed on this claim and his claim regarding his motion to continue should be denied.

E. The testimony provided the coroner did not violate Petitioner's Due Process Rights.

La. Code Evid. art. 702 states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;(2) The testimony is based on sufficient facts or data;(3) The testimony is the product of reliable principles and methods; and(4) The expert has reliably applied the principles and methods to the facts of the case."

Before an expert opinion can be admitted, the trial court must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid, and of whether that reasoning or methodology properly can be applied to the facts at issue. *Wyatt v. Hendrix*, 43,559, 998 So.2d 233, (La. App. 2 Cir. 11/5/08). A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103, 96 S.Ct. at 2397. *State v. Marshall*, 660 So. 2d 819, 827 (La. 1995). The application of the perjury statutes apply where contradictory or inconsistent statements are made in the same or

---

[40] Id at p. 206.
[41] Id at p. 207.

separate proceedings to apply and both statements must be made under oath or affirmation. La. R.S. 14:124. *State v. Elsby*, 416 So. 2d 60 (La. 1982).

Dr. George McCormick was admitted as an expert in forensic pathology. After being accepted as an expert, Dr. McCormick testified that he performed the autopsy offered into evidence by the State. The trial transcript shows that the defense was provided an opportunity to cross-examine Dr. McCormick after the prosecution's direct examination. At no time during that examination did defense counsel attack Dr. McCormick's credibility, nor did defense counsel object to Dr. McCormick's testimony. The defense, during the trial of this matter, never offered evidence or contradictory testimony which would infer that Dr. McCormick's testimony was not truthful.

Petitioner supports his claim by offering statements made by witnesses interviewed/deposed by the Caddo Parish District Attorney's Office in 2005. The statements referenced by Petitioner have not been shown to be relevant or pertinent to the case at hand. There is no indication as to the origin and reason for the interviews transcribed. And they certainly do not establish that the autopsy admitted during Petitioner's trial was not performed by Dr. McCormick, nor do they establish that Dr. McCormick perjured himself. Petitioner provides no evidence that Dr. McCormick made inconsistent statements, while under oath, in these proceedings or other proceedings. Accordingly, Petitioner has not established his perjury claim or that the testimony of Dr. McCormick prejudiced him at the trial of this matter. As such, this claim should be denied.

F. The prosecution did not commit prosecutorial conduct in its closing argument.

Petitioner's sixth (6th) habeas claims is that of prosecutorial misconduct. Petitioner believes that the prosecution referenced his failure to testify in its closing argument. Petitioner

goes on to allege that the prosecution also spoke of a statement made by Petitioner prior to trial. Petitioner thinks that the prosecutor, in some way, drew attention to the fact that he did not testify. It is unclear as to what, exactly, Petitioner considers an inadmissible statement in closing arguments.

La. Code Crim. Proc. art. 774 governs the scope of the contents of closing arguments:

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant."

Prosecutors have wide latitude in choosing closing argument tactics. *State v. Everett*, 2011-0714, 96 So.3d 605, (La. App. 4 Cir. 6/13/12), *writ denied* 108 So.3d 77, 2012-1593 (La. 2/8/13), *writ denied* 108 So.3d 77, 2012-1610 (La. 2/8/13), *habeas corpus dismissed* 2014 WL 4163760. Only direct and indirect references to a defendant's failure to testify are impermissible. *State v. Allen*, 06-778, 955 So.2d 742, (La. App. 5 Cir. 4/24/07), *rehearing denied, writ denied* 999 So.2d 754, 2008-2432 (La. 1/30/09), *habeas corpus denied* 2011 WL 3269582, *motion for relief from judgment denied* 2012 WL 5830562. La. Code Crim. Proc. art 770 requires a clear showing of prejudice caused by a remark made by the prosecution, as a mistrial is a drastic remedy. *State v. Simms*, 2013-0575, 143 So.3d 1258, (La. App. 4 Cir. 6/18/14).

Pursuant to the law governing closing arguments, ADA Linda Watson, summarized the testimony established by the State's witnesses, during her closing argument. At one point Mrs. Watson states that Petitioner stated, "he went to his car."[42] Defense counsel objected to this statement. The prosecution pointed out, and the trial judge noted, that two (2) witnesses testified accordingly and that this portion of Petitioner's confession was referenced at the preliminary examination. Petitioner has not pointed out specific portions of trial testimony to negate the truth

---

[42] Id at p. 945.

15

and veracity of the statement made by Mrs. Watson during closing. Petitioner has also failed to show any portion of the closing argument that references Petitioner's failure to testify. Therefore, it is well settled that the prosecution did not commit prosecutorial misconduct. What is more, Petitioner has not provided any evidence that he was prejudiced by any statement made in closing arguments. This claim lacks merit and should be denied.

    G. <u>Petitioner's claim that his right to effective assistance of counsel and a public trial lack merit and should be dismissed.</u>

Petitioner has alleged that he was prejudiced by defense counsel informing the jury that he was on parole, defense counsel failed to retain an expert, defense counsel failed to file writs, defense counsel misrepresented facts and misrepresented services provided. Considering the above arguments pertaining to services provided by defense counsel, it appears as though Petitioner was provided every opportunity secured by his constitutional rights. He was obviously allowed review by higher courts and sought writs on his own, where counsel did not assist him in his appeals. He had the benefit of appellate counsel and his case has been reviewed at every level. Thus, there is no indication that he was prejudiced by court appointed counsel.

An accused's federal and state constitutional right to a public trial is not absolute, and it may give way to other rights or interests. U.S.C.A. Const.Amend. 6; LSA-Const. Art. 1, § 16. *State v. Loyden*, 899 So. 2d 166 (La. App. 3d Cir. 2005). The right is subject to the trial judge's power to keep order in the courtroom, or to prevent unnecessary pressures or embarrassment to a witness. *Id.* Petitioner's right to a public trial is contingent upon other interests that may be apparent during a criminal trial. A trial judge sits in the best position to determine the extent of publicity afforded at trial. Petitioner's trial involved testimony regarding a murder by stabbing, which took place at a night club in a small community. A public trial was a necessity to keep order and integrity in tact at Petitioner's trial.

## V.   Conclusion

Federal habeas relief requires that a petitioner raise a cognizable claim based on violations applied clearly established federal law.  A habeas petitioner must also show that he has been prejudiced by the outcome of the state court's decision.  In this case, Petitioner has failed to show that the state court has made a decision contrary to federal law or has unreasonably applied federal law, thereby violating his constitutional rights.  For these reasons, Respondent prays that Petitioner's Petition for Habeas Corpus Relief be denied.

Respectfully submitted,

By: __s/Molly F. McEacharn__
Molly F. McEacharn
Assistant District Attorney
501 East Green Street
Tallulah, Louisiana 71282
LSBA # 32582

### CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the aforementioned Answer to Petition for Writ of Habeas Corpus was served upon Defendant, Larry R. Brown, #300100, Louisiana State Penitentiary, Angola, Lousiana, via prepaid postage.

Tallulah, Louisiana, this 11th day of May, 2015.

*s/Molly F. McEacharn*
Molly F. McEacharn