## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**WARD E. JACKSON**

**LA. DOC #101004**

**VS.**

**WARDEN BURL CAIN**

**CIVIL ACTION NO. 3:13-cv-2723**

**SECTION P**

**JUDGE DONALD E. WALTER**

**MAGISTRATE JUDGE HAYES**

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Ward E. Jackson, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on September 18, 2013.  [doc. # 1].  Petitioner attacks his second degree murder conviction and the life sentence imposed by the Sixth Judicial Court, Madison Parish.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The Louisiana Second Circuit Court of Appeal set forth the underlying facts in this case as follows:

> On October 11, 2003, the victim, Gary Haywood, was asked to leave the Old School Lounge in Tallulah because he was being a nuisance. Later that evening, the appellant and Haywood were seen talking outside the lounge when suddenly they began fighting. While no one witnessed the actual stabbing, two bystanders took hold of the appellant, who was holding a knife. One of the men told the appellant to drop the knife, and he told the victim to run.

> The victim ran to a nearby residence and banged on the door for help. When officers responded to the call, the victim was found unconscious near the residence. He was pronounced dead at an area hospital. He had been stabbed in the chest and left arm. The autopsy revealed that death was due to hemorrhaging from the 3 1/2 inch stab wound in the chest of the victim that incised the lung and the heart.

The record shows that after the stabbing, the appellant went home, told his wife he had stabbed someone, washed his knife and took his vehicle to his brother's house. He was subsequently arrested just hours after the stabbing by police investigators, and he made an unrecorded oral statement regarding his involvement in the incident. The knife was never found, although a holster or sheath was found in a drawer where the defendant told investigators the knife could be found.

After being advised of his rights, appellant signed a waiver and gave an oral statement to investigators. Appellant stated that the victim owed him about $100 for which he had confronted the victim. He said that during the incident he thought the victim had something behind his back, so he went to his vehicle and got his knife. He stated he stabbed the victim in the chest but did not mean to cut him "that bad."

Prior to trial, the appellant unsuccessfully attempted to have the statement suppressed. He was tried and convicted of second degree murder, which carries a mandatory life sentence without benefit of probation, parole, or suspension of sentence.

*State v. Jackson*, 926 So. 2d 815, 817 (La. App. 2 Cir. 2006).  The appellate court affirmed Petitioner's conviction and sentence on April 12, 2006.  *Id.* at 822.  The Louisiana Supreme Court denied Petitioner's subsequent application for writ of certiorari on December 15, 2006. *State v. Jackson*, 944 So. 2d 1272 (La. 2006).  Petitioner did not seek further direct review before the United States Supreme Court.

On July 18, 2007, Petitioner filed a *pro se* application for post-conviction relief and a "motion for discovery" in the state trial court.  [doc. # 7-1, p. 23, 62].  In the motion, Petitioner sought information about Dr. George McCormick, a witness who testified that he performed the autopsy on the victim.  *Id.* at 62.  On August 15, 2007, following a hearing, the trial court denied the motion.[1]  *Id.* at 71.  Petitioner subsequently applied for a supervisory writ before the appellate

---

[1] Petitioner provided a transcript of the hearing that is dated August 15, 2007.  [doc. # 7-1, p. 69].  However, the Court Reporter's Certificate states that "the hearing was heard in the East Carroll Parish Courthouse, Lake Providence, Louisiana, on the 23rd day of February, 2007."  *Id.* at 72.

court and argued that the trial court erred in denying his "motion for discovery."  [doc. # 7-2, p. 6].  The appellate court denied the application on December 20, 2007.  *Id.* at 11.  On January 7, 2008, Petitioner filed a writ application before the Louisiana Supreme Court and again argued that the trial court erred in denying his motion.  *Id.* at 12.  The Louisiana Supreme Court denied the application on October 24, 2008.  [doc. # 19-11, p. 142].

On November 16, 2010, after several delays, the trial judge denied Petitioner's initial application for post-conviction relief as "untimely filed."  [doc. # 7-2, p. 35].  Petitioner sought supervisory review of the court's ruling and, on February 3, 2011, the Second Circuit Court of Appeal vacated the ruling, remanded the matter, and ordered the district court to determine when Petitioner filed his application.  [doc. # 19-12, p. 111].  On October 7, 2011, at a hearing on the matter, the trial court found that Petitioner timely filed his application on July 18, 2007.  [doc. # 19-13, p. 10].  The trial court then scheduled a subsequent hearing to adjudicate Petitioner's claims.  *Id.* at 11.

On some unspecified date, Petitioner, via counsel, filed a supplemental application for post-conviction relief that expanded three of his original claims and added an additional claim.  [doc. # 7-2, p. 36].  On September 25, 2012, the trial court, reviewing only three of Petitioner's claims, denied relief.  *Id.* at 48.  On February 7, 2013, the Second Circuit Court of Appeal remanded the matter after finding that the trial court improperly limited the grounds on which Petitioner sought relief.  [doc. # 7-3, p. 17].

On remand, the trial court addressed Petitioner's remaining assignments of error and denied relief.  [doc. # 7-3, p. 19].  Petitioner filed the instant Petition on September 18, 2013.  [doc. # 1].  He raises the following assignments of error: (1) the trial court rendered an erroneous

discovery ruling; (2) the trial court erroneously denied his motion for new trial; (3) his counsel labored under a conflict of interest; (4) the trial court erroneously denied his motion for a continuance; (5) a witness committed perjury; (6) prosecutorial misconduct; (6) ineffective assistance of counsel; and (7) the trial court deprived him of his right to a public trial. *Id.*

On December 26, 2013, the Court held the case in abeyance and gave Petitioner an opportunity to exhaust his state court remedies. [doc. # 8]. On March 31, 2015, the appellate court denied Petitioner's application for post-conviction relief. [doc. # 20-1]. The Louisiana Supreme Court, on February 27, 2015, likewise denied Petitioner's application. [doc. # 20-2, p. 1]. The matter is now before the Court.

## **Law and Analysis**

### I. **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.   Petitioner's Claims

A. Claim One: Erroneous Discovery Ruling

Petitioner first claims that the trial court failed to make an *in camera* inspection of Detective James Rash's written notes before ruling that the notes were not discoverable. [doc. # 1-2, p. 11-12]. Prior to trial, the State notified Petitioner of its intent to present his inculpatory statements via the testimony of other witnesses. [doc. # 19-2, p. 4]. At trial, counsel for Petitioner objected and argued that "any statements alleged to be made by the accused are hearsay . . . ." [doc. # 19-5, p. 135]. The court, outside the presence of the jury, held a hearing on the issue. *Id.* at 137.

At the hearing, the State called Detective James Rash to testify.  *Id.* at 140.  Rash testified that Petitioner "volunteered a statement . . . as to what happened," and that he "wrote down what [Petitioner] said."  *Id.* at 145-46.  He further stated that he gave his notes to the District Attorney's office and that he did not provide the notes to Petitioner's counsel.  *Id.* at 147.  Thereafter, the trial court ruled that the detective's notes were work product and not discoverable.  [doc. # 19-6, p. 4].  The court ruled further, "Any oral confession that Detective Rash . . . might remember [is] admissible . . . ."  *Id.*

Trial resumed and the State eventually called Detective Rash to testify.  According to Rash, Petitioner volunteered the following:

> He told me that he was at the Old School and that [the victim] had something that looked like he had something behind his back.  He had his hand behind his back. And, that uh, that's when he went to his car.  He retrieved a knife and he came back. He confronted him ag–, confronted [the victim].  And, he said that he jugged at him with the knife and that he stabbed him in the chest, but he didn't mean to cut him that bad.  And then after that he said he went and got in his car and took some food home. And he said he took the food into his residence.  He said he took the knife in.  He washed the blood off in the sink, washed the blood off the knife in the sink and put the food up.  And then he said he left the residence.  And, uh, he also stated that the reason that he had confronted him was that, uh, [the victim] owed him one hundred dollars.

[doc. # 19-7, p. 67-68].

Here, relying on *Brady v. Maryland*, 373 U.S. 83 (1963), Petitioner argues that the detective's notes could have contained either exculpatory information or information he could have used to impeach the detective's testimony.  *Id.* at 14.   Under *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963), the prosecution has a duty to disclose evidence favorable to the accused that is material to the accused's guilt or punishment.  "Evidence is material for purposes of *Brady* 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different,' meaning the probability is 'sufficient to undermine confidence in the outcome.'" *Canales v. Stephens*, 765 F.3d 551, 574 (5th Cir. 2014) (quoting *U.S. v. Bagley*, 473 U.S. 667 (1985)).  To prevail, a "petitioner must prove: (1) that the evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that the evidence [has] been suppressed by the State, either willfully or inadvertently; and (3) that prejudice[2] [has] ensued." *Holiday v. Stephens*, 587 Fed. App'x 767, 779 (5th Cir. 2014) (internal quotation marks and citation omitted).

Here, Petitioner fails to detail the substance of Detective Rash's notes.  Apparently recognizing this failure, Petitioner argues that he cannot detail the substance of the notes because the trial court refused to order the State to disclose them.  Petitioner's alleged dilemma, however, is not as problematic as he claims.

To prevail on this claim, Petitioner must demonstrate, among other things, that the notes contain exculpatory or impeachment material.  Thus, the notes must not only differ from the detective's unfavorable testimony, they must also contain Petitioner's favorable, exculpatory statements.  In this respect, although Petitioner was present at the interview and knows what he said, he does not recount what he said and he does not dispute the veracity of the detective's testimony.

To the contrary, in fact, Petitioner hedges and argues that "[t]he record in this matter simply makes it impossible to know whether the notes of the detective would have made a difference . . . without an in camera inspection by some court."  [doc. # 1-2, p. 14].  Instead of

---

[2] "The prejudice component is the same as materiality for *Brady* purposes." *Canales*, 765 F.3d at 574.

claiming that the notes contain his true, exculpatory statements and explaining what he really said at the interview, Petitioner speculatively suggests that "there were questions as to what was in the notes . . . ." *Id.* at 15. The Court cannot conclude, from Petitioner's speculation, that the notes were favorable to Petitioner or that, had the State produced the notes, there is a reasonable probability that the result of the proceeding would have been different.[3] *See Pruett v. Thaler*, 455 Fed. App'x 478, 486 (5th Cir. 2011) (denying a claim that the prosecution failed to disclose an investigator's notes from the interviews of two witnesses, in part, because the petitioner did not identify any inconsistences between the notes and the witnesses' testimony); *U.S. v. Masat*, 948 F.2d 923, 932 (5th Cir. 1991) (holding that "[a]lthough the district court apparently did not conduct an in camera inspection of the alleged *Brady* documents, [the defendant] has not shown how the documents were material to his defense, [or] how the documents' production would have changed the outcome of the case . . . .").

The Second Circuit Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. This claim should be **DENIED**.

B. Claim Two: Denial of Petitioner's Motion for New Trial

Petitioner claims that the trial court erroneously denied his motion for new trial. [doc. # 1-2, p. 16]. The appellate court set forth the relevant background to this claim, as well as its ruling, as follows:

> [T]he appellant contends that the trial court erred in determining that defendant had not suffered any injustice in his trial and that he was not entitled to a new trial. Appellant argues that because Calvin Brown changed his testimony at trial and stated

_____

[3] Even assuming that the notes in question contained information favorable to Petitioner's defense, it is not reasonably probable, given the strength of the State's evidence against Petitioner, that the result of the proceeding would have differed had Petitioner obtained the notes.

he perjured himself in his prior testimony at the preliminary examination hearing, he should have been granted a new trial. He states that the witness's change in testimony is suspicious since it came after a lead investigator spoke to the witness while he was "in the parish jail for a crime he did not commit." Appellant contends that this witness's original testimony corroborated another defense witness's testimony regarding the victim's aggressive acts.

\* \* \*

The record discloses that Calvin Brown testified at the preliminary hearing that he saw the victim come up behind the appellant as the appellant opened his car door and heard the victim tell the appellant that he did not have anyone to protect him now. When called as a defense witness at trial, Brown stated he did not see anything "go on between" the victim and the appellant. The defense then used the transcript of the prior hearing to impeach his testimony. On cross-examination, Brown admitted he was not there during this fight.

\* \* \*

Appellant presented no evidence at the hearing on the motion for new trial. After having the trial court issue another subpoena to have Calvin Brown brought to the hearing, the defense counsel stated on the record that he was not calling Brown as a witness because Brown did not "understand the difference in an oath and perjury." In its ruling, the trial court pointed out that Brown testified at trial and was "cross examined" by the defense[4] and denied the motion finding there was "insufficient allegations or proof of grounds."

\* \* \*

Here there was no new evidence to show that Brown had been forced to change his testimony. At the trial, the jury heard the prior statement Brown made as well as the allegations regarding why Brown was not testifying to the same effect at that time. There is nothing to indicate that there was any injustice done to the appellant as a result of this defense witness's testimony.

Further, it should be noted that Brown's prior statement showed only that the victim may have initially been the aggressor, but it did not contain enough information to support a finding that this stabbing was in self-defense.

This assignment lacks merit.

---

[4] Brown was called by the defense, not the state, and was thus questioned on direct and re-direct.

*Jackson*, 926 So. 2d at 819-21 (footnote in original).[5]

Here, Petitioner does not claim that the State knowingly utilized or elicited the witness's perjured testimony.  In fact, as the appellate court noted, defense counsel called the witness.[6] Instead, Petitioner only assigns error to the trial court's decision to deny his motion for new trial and the appellate court's subsequent review of that assignment of error.

"Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also presented."  *Leblanc v. Quarterman*, 2008 WL 2330746 at *6 (N.D. Tex. 2008); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). Rather, "[f]ederal habeas corpus review is limited to errors of constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.  *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

Here, Petitioner's claim is entirely premised upon an alleged violation of LA. CODE CRIM. PROC. art. 851, a statute listing grounds for a new trial.[7]  As the claim does not involve any

---

[5] Petitioner presented seventeen grounds for a new trial in his state court motion.  [doc. # 19-2, p. 73].  Here, however, he only argues that the trial should have granted a new trial in light of the witness's alleged perjury.  [doc. # 1-2, p. 16-22].

[6] Petitioner does not claim that his counsel erred in calling the witness.  Petitioner submits that his counsel "was unaware of the fact that Mr. Brown was going to change his testimony until he took the stand."  [doc. # 1-2, p. 17].

[7] While Petitioner does mention, as an apparent afterthought, that the trial court's decision violated the Fifth and Fourteenth Amendments,  [doc. # 1-2, p. 22], he never presented this argument to the state courts.  He did claim that the trial court's decision violated his "basic

10

question of constitutional magnitude, it should be **DENIED**.[8]  *See Haygood v. Quarterman*, 239

Fed. App'x 39, 42 (5th Cir. 2007) (holding that "the denial of a motion for new trial does not

necessarily constitute a violation of a federal constitutional right.").

C. Claim Three: Conflict of Interest

      Petitioner claims that his counsel could not render effective legal assistance because

counsel labored under a conflict of interest.  [doc. # 1-2, p. 22].  According to Petitioner, counsel

represented a witness for the prosecution, Gerald D. Simpson, "on drug charges approximately

four days before Petitioner's trial" and "arranged a deal with the District Attorney's office

whereby Dale Simpson received five (5) years probation" in exchange for his testimony against

Petitioner.  *Id.* at 22-23.  He argues, in particular, that counsel's conflict prohibited counsel from

effectively cross-examining Simpson.  *Id.*  The trial court, on collateral review, denied

Petitioner's claim:

> Pursuant to a plea agreement, Mr. Simpson received a 5 year suspended sentence for
> Possession of Cocaine and Mr. Cannon's representation of him was terminated.  Mr.
> Simpson was not required to testify against Mr. Jackson as a condition of the plea
> agreement.  The transcript of Mr. Jackson's trial reflects a vigorous and thorough line
> of questioning by [counsel] of Mr. Simpson.

[doc. # 7-2, p. 48].

---

constitutional rights," but he did not elaborate.  [doc. # 19-9, p. 21].  Such "fleeting reference to
the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument,
does not sufficiently alert and afford a state court the opportunity to address an alleged violation
of federal rights."  *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001).

    [8]  The Court also points out that Petitioner's claim is contradictory.  He first claims that
the State should have charged the witness, Brown, with perjury after Brown stated at the
preliminary hearing that he witnessed the altercation between Petitioner and the victim.  [doc. #
21, p. 4, 5].  Evidently, Petitioner claims that this testimony was false.  Petitioner goes on,
however, to claim that Brown testified falsely at trial when he stated that "he saw nothing and
that he only heard about what happened."  [doc. # 1-2, p. 17].

The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), whose performance is not adversely affected by an actual or potential conflict of interest that imperils the defendant's right to a fair trial. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).[9] "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.*

"An actual conflict exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (internal quotation marks and citation omitted).  "This determination depends on a number of factors, 'including . . . whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether

---

[9] "The *Cuyler* standard applicable when a criminal defendant alleges that counsel's performance was impaired by an actual conflict of interest differs substantially from the *Strickland* standard generally applicable to Sixth Amendment ineffectiveness claims.  *Strickland* requires a showing that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, as well as a showing of prejudice, which is defined as a reasonable probability that counsel's error changed the result of the proceeding.  *Cuyler*, on the other hand, permits a defendant who raised no objection at trial to recover upon a showing that an actual conflict of interest adversely affected counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (internal citations omitted).  "In the absence of [*Sullivan 's*] actual conflict exception, a defendant claiming that his attorney had a conflict of interest must show a reasonable probability that the conflict prejudiced the defense." *Bostick v. Quarterman*, 580 F.3d 303, 306 n.2 (5th Cir. 2009) (alterations in original) (internal quotation marks and citations omitted).

the prior representation has been unambiguously terminated.'" *Wilkins v. Stephens*, 560 Fed.

App'x 299, 309 (5th Cir. 2014) (citing *U.S. v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005)).  An

"adverse effect," is "established with evidence that some plausible alternative defense strategy or

tactic could have been pursued, but was not because of the actual conflict impairing counsel's

performance."[10]  *Id.*  "[U]ntil a defendant shows that his counsel actively represented conflicting

interests, he has not established the constitutional predicate for his claim of ineffective

assistance."  *Id.*

 Here, Petitioner fails to demonstrate an actual conflict of interest.[11]  Counsel represented

Simpson in an unrelated proceeding.  Further, as the trial court observed, counsel's

representation of Simpson terminated prior to Petitioner's trial.  In this respect, there is no

indication that counsel was compelled to choose between Simpson's interests and Petitioner's

interests at trial because, by then, counsel no longer represented Simpson.  *See U.S. v. Olivares*,

786 F.2d 659, 663 (5th Cir. 1986) (cross-examination of state witness that was also a former

client was not an actual conflict of interest as counsel's representation of the witness terminated

before trial and nothing indicated that counsel had the witness's interest in mind during trial).

Petitioner makes no showing that, when counsel questioned Simpson at Petitioner's trial, counsel

---

 [10] In *Mickens v. Taylor*, 535 U.S. 162 n.5 (2002), the Supreme Court announced that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect," and that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  Nevertheless, according to the Fifth Circuit, "the relevant questions remain the same," and courts must ask whether counsel labored under a conflict and interest and whether that conflict adversely affected counsel's representation.  *U.S. v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005).

 [11] Petitioner does not claim, and the record does not reveal, that Petitioner raised an objection to counsel's alleged conflict of interest at trial.

harbored any residual loyalty to Simpson.  Moreover, even assuming counsel did have Simpson's interests in mind at the time, Petitioner makes no showing that his interests and Simpson's interests were in any way divergent.  *See Bostick v. Quarterman*, 580 F.3d 303, 307 (5th Cir. 2009) (ruling that a petitioner must show an actual, rather than speculative or potential conflict of interest).

Petitioner also fails to demonstrate that the alleged conflict of interest adversely affected counsel's performance.  Petitioner speculatively claims that counsel's concern for Simpson hindered counsel's cross-examination and prevented him from questioning Simpson about statements that Simpson heard the victim make.  Petitioner argues that counsel could not pursue this line of questioning because counsel previously secured a plea deal for Simpson only in exchange for Simpson's testimony *against* Petitioner.[12]  [doc. # 1-2, pp. 23].

Petitioner however, does not present any evidence demonstrating that the State offered, or that counsel sought, a plea deal from Simpson in exchange for Simpson's testimony against Petitioner.  Thus, even supposing that Petitioner's proposed line of questioning was a plausible, alternative defense strategy, Petitioner fails to demonstrate that counsel chose not to pursue it because of counsel's prior representation.  *See Lee v. Cain*, 519 Fed. App'x 869, 880 (5th Cir. 2013) (noting that a petitioner must show that the *reason* counsel's performance was compromised was the conflict of interest).  This claim should be **DENIED**.

D. Claim Four: Denial of Petitioner's Motion for Continuance

Petitioner claims that the trial court erred when it denied his motion for continuance. [doc. # 1-2, p. 24].  On April 21, 2005, Petitioner's counsel moved to continue the trial on

---

[12] This is the Court's construction of Petitioner's rather tortuous argument.

14

grounds that the State produced the victim's autopsy report at the "eleventh hour." [doc. # 19-3, p. 52]. Counsel argued that, due to the State's delay, he did not have enough time to secure an expert witness to review and dispute the findings in the report. *Id.* at 57. The court denied the motion, reasoning that the State promptly produced all of the information it received, counsel twice certified that the defense was ready to proceed to trial, and the defense possessed, for over a year, a hospital report containing "the same information as the autopsy report." *Id.* at 57-58.

"When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981). More specifically, in addition to demonstrating an abuse of discretion, a petitioner must show that "there is a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) (quotation marks and quoted source omitted).

Here, as noted, Petitioner argues that the trial court should have granted a continuance because counsel did not have enough time to secure an expert. [doc. # 1-2, p. 25]. In a later claim, however, Petitioner argues that "[c]ounsel did have time to hire an expert but failed to perform this obligation." [doc. # 1-2, p. 41]. Given these contradictory statements, the Court finds little credence in Petitioner's argument that the trial court abused its discretion.

Even putting that aside, and assuming that the trial court did abuse its discretion, there is no reasonable probability that the outcome of the trial would have been different had the trial court granted a continuance. Petitioner postulates that a continuance would have given counsel

time to hire an expert, and the expert "would have discovered . . . that Doctor McCormick did

not perform the autopsy . . . ."  [doc. # 1-2, p. 25].  Petitioner, however, does not demonstrate that

he could have hired an expert, he does not state what kind of expert he would have hired, he does

not indicate who he would have hired, and he does not set forth in any detail what an expert

would have stated at trial.[13]  In addition, and most notably, Petitioner never claims that the

findings in the autopsy report were inaccurate.  Instead, he argues that the "report could most

definitely have been called into question."  [doc. # 1-2, p. 34].  For these reasons, the state

*habeas* court's denial of this claim, [doc. # 7-3, p. 20], was not contrary to, or an unreasonable

application of, clearly established federal law.  This claim should be **DENIED**.

E. Claim Five: Perjured Testimony

Petitioner claims that the State improperly allowed Dr. George M. McCormick, a former

coroner in Caddo Parish, to falsely testify that he performed the autopsy on the victim.  [doc. # 1-

2, p. 26-27].  In support, Petitioner offers numerous interviews from an investigation into Dr.

McCormick's practice.  [doc. # 19-10, p. 109].  In the interviews, several of Dr. McCormick's

employees gave statements establishing that, although McCormick's signature appeared on many

autopsy reports for Caddo Parish, he often did not perform the autopsies and his employees

frequently forged his signature.[14]  *Id.*

---

[13] *See Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir. 1985) (denying a *habeas* petition where the petitioner failed to show that he knew where the prospective witness was or that he could locate the witness).

[14] *See* Robert D. Felder, *A Coroner System in Crisis: The Scandals and Struggles Plaguing Louisiana Death Investigation*, 69 LA. L. REV. 627, 629-30 (2009) (detailing the routine practices of Dr. McCormick and his staff).

The state trial court, on collateral review, denied Petitioner's claim, and noted that "[t]here was no evidence revealed at the trial that Dr. McCormick did not perform the autopsy." [doc. # 7-2, p. 49].  It also observed, "In the event Dr. McCormick was not the one who performed the autopsy, Louisiana Law does not bar a medical expert from rendering his own opinion based on a review of medical records prepared by other doctors and health care providers." *Id.*

If a prosecutor knowingly uses relevant but false testimony to obtain a conviction, that conviction violates an individual's due process rights under the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959).  Knowingly using perjured testimony is grounds to vacate a conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *U.S. v. Agurs*, 427 U.S. 97, 103 (1976).  To obtain relief, a petitioner must show that "1) the testimony was actually false, 2) the state knew it was false, and 3) the testimony was material." *Canales*, 765 F.3d at 573 (quoting *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998)).

Here, to begin with, Petitioner offers nothing to establish that Dr. McCormick testified falsely.  A review of the interviews that Petitioner cites reveals no references to any aspect of Petitioner's proceeding.  Thus, there is no indication that the evidence he cites is relevant to the case at bar.[15]  While the evidence does tend to establish that McCormick did not perform many of the autopsies he claimed to have performed, it does not establish that McCormick lied about conducting the autopsy here.

---

[15] Petitioner admits that the evidence he references is "from other proceedings . . . ." [doc. # 1-2, p. 27].

Next, even assuming, *arguendo*, that McCormick did offer false testimony, Petitioner does not establish, or even argue, that the State knew the testimony was false.  Instead, he equivocates and argues that "[t]here had to be times when District Attorney Investigators or the lead Investigators . . . knew that Doctor McCormick was not performing the autopsies."  [doc. # 1-2, p. 31].  Moreover, the interviews in the record that expose Dr. McCormick's questionable practices occurred after Petitioner's trial.  [*See* doc. #s 19-2, p. 69; 19-10, p. 109].

Further, and again assuming Dr. McCormick falsely testified that he performed the autopsy, this particular testimony did not impact the jury's verdict because the identity of the individual who performed the autopsy was immaterial.  To be sure, Petitioner does argue that this particular false testimony rendered McCormick's remaining testimony suspect; however, Petitioner never explains how the remaining testimony was false, and he does not dispute the findings in the autopsy report.[16]  In fact, consistent with McCormick's testimony that the victim died from knife wounds, defense counsel maintained throughout the trial that Petitioner killed the victim with a knife in self-defense.[17]  [*See* doc. # 19-8, p. 53-64].  This claim should be **DENIED**.

## F. Claim Six: Prosecutorial Misconduct

Petitioner claims that one prosecutor committed misconduct when she referenced Petitioner's decision to not testify.  [doc. # 1-2, p. 35].  During closing argument, the prosecutor referenced statements that Petitioner made to Detectives Esters and Rash:

---

[16] At best, Petitioner claims that the "autopsy report could most definitely have been called into question."  *Id.* at 34.

[17] Petitioner does not fault counsel for presenting a self-defense argument.

> [Petitioner] said something about that he told, uh, Detective Rash and Mr. Esters
> something about he thought that [the victim] had his hand behind his back.  He didn't
> even tell them that he saw any kind of weapon, anything like that.  Just he had his
> hand behind his back, so I thought he was going to do something.  Well, nobody else
> has testified to that. . . . So, [Petitioner] said, he said that about, saw his hand behind
> his back so I thought he was going to do something.  So he said, I went to my car.

[doc. # 19-8, p. 44].  Defense counsel objected and argued at a sidebar conference, "I'm not

aware of any statement by [Petitioner] saying that I went to my car."  *Id.* at 45.  The court

overruled the objection and the prosecutor continued:

> The defendant's statement was consistent.  He said that he went to his car *and he
> didn't come up here* and, he said what his statement, where I'm getting this from, is
> his statement to Detective Rash and Jesse Esters.  They both testified.  Detective
> Rash told you that he went and got, he said, I went to my car, got my knife out, and
> I went back, and I jugged at him and I stabbed him in the chest.  That is consistent.
> I jugged at him and I stabbed him in the chest.  That is consistent with the wounds
> to the arm and the wound to the chest.  That is consistent with the physical evidence.

*Id.* at 45-46.  In the instant Petition, Petitioner takes issue with the italicized portion of the

prosecutor's argument set forth above.

The Fifth Amendment forbids a prosecutor from commenting on an accused's silence.

*Griffin v. California*, 380 U.S. 609, 614 (1965).  The test for determining whether a prosecutor's

remark constituted a comment about the accused's silence is twofold: "(1) whether the

prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the

character of the remark was such that the jury would naturally and necessarily construe it as a

comment on the defendant's silence."  *U.S. v. Elashyi*, 554 F.3d 480, 506 (5th Cir. 2008)

(quotation marks and citations omitted).  "The prosecutor's intent is not manifest if there is some

other, equally plausible explanation for the remark."  *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th

Cir. 2003) (citation omitted).  "As for whether a jury would naturally and necessarily construe a

remark as a comment on the defendant's failure to testify, 'the question is not whether the jury

19

possibly or even probably would view the challenged remark in this manner, but whether the jury

necessarily would have done so.'" *Id.* (quoting *U.S. v. Collins*, 972 F.2d 1385, 1406 (5ᵗʰ Cir.

1992)).

In the case at bar, it is not clear what the prosecutor meant by the word "here."  The

prosecutor's comment, "he didn't come up here," is ambiguous and in no way manifests an intent

to comment on Petitioner's silence.  For the same reason, the jury would not have necessarily

construed the fleeting statement as a comment on Petitioner's decision to remain silent.  The

prosecutor did not draw attention to Petitioner's silence or specifically point out that Petitioner

failed to speak up and recant his statements.  When viewed in context, the prosecutor was simply

arguing that Petitioner's confession was consistent with the other evidence presented at trial.[18]

The passing comment was merely "an isolated comment in a sea of [incriminating] evidence."

*See Cotton*, 343 F.3d at 752.  This claim should be **DENIED**.

G. Claim Seven: Ineffective Assistance of Counsel

Petitioner claims that counsel rendered ineffective assistance because counsel: (1)

informed prospective jurors that Petitioner was on parole; (2) failed to appeal the trial court's

decision to deny Petitioner's Motion for Continuance; (3) failed to hire an expert; and (4)

"dishonestly and fraudulently misrepresented material facts and deceitfully misled Petitioner

about services that could be provided."  [doc. # 1-2, p. 22, 36-43].

---

[18] *See Lee v. Michael*, 476 Fed. App'x 29, 30 (5ᵗʰ Cir. 2012) (noting that an attorney may permissibly argue "to the jury the inferences and conclusions that it should draw from the evidence so long as counsel's assertions are based on the evidence."); *Montoya v. Collins*, 955 F.2d 279, 287 (5ᵗʰ Cir. 1992) (finding no misconduct when a prosecutor asked the jury if it heard anything from the defendant, because the prosecutor intended to comment on the failure of the defense, rather than the failure of the defendant, to explain the testimony presented).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The burden, therefore, is on the petitioner to show that counsel's representation fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994). In other words, the petitioner must demonstrate that counsel's representation was objectively unreasonable. *Strickland*, 466 U.S. at 688.

To establish prejudice, the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citation

21

omitted).  Stated differently, a petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.  To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.  "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

i. Counsel Informed Prospective Jurors That Petitioner Was on Parole

Petitioner claims that, during *voir dire*, counsel "informed all of the jury pools that Petitioner was on parole" for attempted aggravated rape.  [doc. # 1-2, p. 38].  Petitioner argues

that, "[b]ecause he did not take the stand, his prior convictions did not have to be revealed."  *Id.*
He also argues, preemptively, that counsel did not strategically mention his parole to mitigate the
effect that his convictions would have on the jury at trial because counsel never intended to call
him to testify.  *Id.*

At *voir dire*, counsel mentioned Petitioner's parole status eight times.  [doc. #s 19-3, p.
118, 122, 125; 19-4, p. 34, 35; 19-5, p. 26, 27, 31].  On three occasions, counsel specified that
Petitioner was on parole for attempted aggravated rape.  [doc. #s 19-4, p. 34, 35; 19-5, p. 31].
The trial judge found counsel's statements troubling.  Speaking to counsel, the judge remarked
that Petitioner's conviction "would have never come out if you hadn't have mentioned it."  [doc.
# 19-4, p. 44].  The judge added, "I don't want you to taint these other jurors by bringing up
something that is really not admissible at trial."  *Id.*  Despite the judge's admonition, counsel
mentioned Petitioner's parole three more times.

One prospective juror, in response to counsel's remarks, stated that Petitioner's attempted
aggravated rape conviction was "a big problem" and would affect her ultimate decision at trial.
[doc. # 19-4, p. 34-35].  While counsel successfully struck the prospective juror for cause,[19]
counsel did not strike Michael Bankston, a prospective juror who served on Petitioner's jury.  *Id.*
at 44.  At *voir dire*, Bankston expressed concern when counsel asked whether Petitioner's prior
conviction would "make a difference" in the minds of the jurors.  *Id.* at 34.  Referring to the prior
crime, Bankston asked how old the victim was.  *Id.*  He stated that, depending on the age of the

---

[19] The juror's comments illustrate the prejudice that jurors can harbor when they learn of
a defendant's prior crimes.

attempted aggravated rape victim, Petitioner's conviction could affect his guilt or innocence

decision.  *Id.*  Counsel did not respond to Bankston's question.

    The state *habeas* court denied Petitioner's claim and reasoned:

> The perfect opportunity to purge unfavorable jurors from the panel is during voir dire
> examination.  It is the defense counsel's duty to gather enough information to
> exercise challenges intelligently.  It was conceivable that the defendant's parole
> status would come to light during the trial.  It was certainly reasonable trial strategy
> on the part of defense counsel to bring the defendant's past criminal history to light
> during the voir dire examination in order to determine if the potential jurors could
> view the testimony fairly and impartially.  Such strategy is certainly no indication of
> ineffective assistance.

[doc. # 7-3, p. 20-21].

    This Court finds counsel's remarks concerning.  However, even assuming that the

remarks fell below an objective standard of reasonableness, the Court cannot conclude that

Petitioner has demonstrated prejudice sufficient to warrant concluding that the state court's

application of *Strickland* was unreasonable.  The weight of the inculpatory evidence presented at

trial was overwhelming.[20]  In addition, of the two prospective jurors that Petitioner highlights to

demonstrate prejudice, only one served on the jury.  The other, Bankston, conditioned his

concern about Petitioner's prior conviction on the age of the victim, and counsel never disclosed

---

    [20] For instance, according to Investigator Jesse Esters, Petitioner stated: "What if I said
what if I told you that he had his hand behind his back.  And then I walked to my car and I got
my knife and I came back and I jugged him in the arm and then I jugged him in the chest.  But, I
didn't mean to hurt him that bad."  [doc. # 19-6, p. 46].  Petitioner's girlfriend, Irene Richardson,
testified that Petitioner told her he "stabbed [the victim] in the arm . . . ."  *Id.* at 100.  She also
stated that she saw Petitioner's knife on the floorboard of his car on the day of the incident and
that, following the incident, she never saw the knife again.  *Id.* at 103-04.  David Moore testified
that, immediately after he helped separate Petitioner and the victim from the altercation, he
observed a knife in Petitioner's hand.  *Id.* at 138.  According to Detective Rash, upon
questioning, Petitioner stated that he went to his car, retrieved a knife, confronted the victim,
"jugged" the victim with the knife in the chest, and proceeded home to wash the blood off of the
knife.  [doc. # 19-7, p. 67-68].

the victim's age.  Moreover, after the prosecutor asked Bankston whether he could be fair and impartial, Bankston responded, "Yes, ma'am, I could be fair."  *Id.* at 37.  Notably, this exchange occurred immediately after the prosecutor asked one juror whether she would vote not guilty despite knowing that Petitioner was on parole for an unrelated crime.  *Id.*

It is difficult, to be sure, to determine the weight, if any, that the remaining jurors assigned to Petitioner's prior conviction.  That said, in light of the considerable deference owed, the Court cannot conclude that the state *habeas* court's decision to deny Petitioner's claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond *any possibility* for fairminded disagreement.

ii. <u>Counsel's Decision to Forego Seeking Writs</u>

As stated above in Section "D," on April 21, 2005, Petitioner's counsel moved to continue the trial on grounds that the State produced the victim's autopsy report at the "eleventh hour."  [doc. # 19-3, p. 52].  The trial court denied the motion, and counsel informed the court that he intended to appeal the decision.  *Id.* at 57-60.  Following trial, counsel filed a motion for new trial and argued, *inter alia*, that the trial court erroneously denied the previous motion to continue the trial.  [doc. # 19-2, p. 73].  The trial court denied the motion for new trial, in part, because counsel failed to perfect writs to the appellate court.  [doc. # 19-8, p. 148].  As the court put it, counsel "abandoned" his objection to the court's initial ruling.  *Id.*  Here, Petitioner faults counsel's decision to forego applying for writs.  [doc. # 1-2, p. 40].

The state trial court, on collateral review, denied Petitioner's claim.  [doc. # 7-3, p. 21].  It reasoned, "The grounds for a continuance were tenuous and it is highly unlikely that writs would

have been granted since the granting of a motion to continue is within the discretion of the trial judge." *Id.*

Turning to the instant Petition, even if counsel immediately applied for writs and successfully obtained the continuance he sought, there is no reasonable probability that, for the reasons set forth above in Section "D," the outcome of the trial would have differed. Alternatively, to the extent Petitioner argues that the trial court would have granted a new trial had counsel applied for writs (i.e. had counsel not "abandoned" his objection to the trial court's initial denial), his argument is without merit because the trial court also denied the motion for new trial on other, independent grounds.  [*See* doc. # 19-8, p. 148].   In other words, there is no reasonable probability that, absent counsel's decision to forego applying for writs, Petitioner would have received a new trial.

### iii. Failure to Hire an Expert

Petitioner claims that counsel rendered ineffective assistance by failing to secure an expert to rebut Dr. McCormick's testimony.[21]  [doc. # 1-2, p. 40].  Claims of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness's testimony are largely speculative.  *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986)).  To demonstrate ineffective assistance, a petitioner must name the witness, demonstrate that the witness was available to

---

[21] Petitioner argues that counsel had adequate time to hire an expert.  [doc. # 1-2, p. 41]. In Claim "D" above, Petitioner takes a conflicting position and argues that the trial court should have continued the matter to afford counsel enough time to secure an expert.

testify and would have testified, set out the content of the proposed testimony,[22] and show that the testimony would have been favorable to a particular defense.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Here, Petitioner fails to identify a particular expert that counsel should have discovered or called.  By extension, Petitioner fails to show that an expert would have actually testified in his favor.  The state court's rejection of this claim, [doc. # 7-3, p. 21], was not unreasonable.

### iv. Counsel Misrepresented Material Facts

Petitioner claims that counsel informed him that "for a fee of $7,000.000 he could insure that his case would never proceed to trial."  [doc. # 1-2, p. 44].  Petitioner, however, makes no attempt to explain how counsel's alleged actions affected the outcome of his trial.  In this regard, the state court's denial of this claim was not unreasonable.  [doc. # 7-3, p. 21].

Ultimately, Petitioner fails to show that the court's denial of the aforementioned ineffective assistance of counsel claims constituted an error beyond any possibility for fairminded disagreement.  These claims should be **DENIED**.

### H. Claim Eight: Right to a Public Trial

Petitioner claims that, on the second day of trial, the trial court closed the courtroom to the public and, in so doing, deprived him of his right to a public trial.  [doc. # 1-2, p. 46].  The state *habeas* court, after reviewing the trial transcript, found that "the public was free to access the Courtroom throughout the trial."  [doc. # 7-3, p. 22].  The court noted, "At the request of the

---

[22] "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

State, members of [Petitioner's] family who were subpoenaed to testify at trial, as well as any other witnesses present during trial, remained outside of the courtroom during the proceedings after being placed under a rule of sequestration." *Id.*

 "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Here, as Petitioner provides no evidence in support, this claim should be **DENIED**.[23]

<u>Conclusion</u>

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Ward E. Jackson, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another

---

[23] Petitioner asks for an evidentiary hearing to develop the claims that lack factual support.  [doc. # 1-2, p. 1].  The decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of Section 2254(e)(2).  *Cullen*, 131 S. Ct. at 1400-01.  A court "shall not hold an evidentiary hearing on the claim unless the applicant shows that the claim relies on a new rule of constitutional law . . . or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).

There is no basis for granting an evidentiary hearing here.  Petitioner does not base his claims on a new rule of constitutional law and his claims do not rely on a factual predicate that he could not have previously discovered through due diligence.  Moreover, Petitioner does not detail the evidence that an evidentiary hearing will uncover.  *See West*, 92 F.3d at 1399 (observing that courts "need not blindly accept speculative and inconcrete claims as the basis upon which to order a hearing.").  Thus, the record before the Court is sufficient to resolve Petitioner's claims.

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 18th day of June, 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE