
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 14 2015

TONY R. MOORE, CLERK
BY _____
          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **WARD JACKSON**     LA. DOC # 101004 | : | CIVIL ACTION NO: 3:13-cv-2723 |
| | : | SECTION P |
| **VERSUS** | : | JUDGE DONALD E. WALTER |
| **WARDEN N. BURL CAIN** | : | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is a Report and Recommendation issued by the Magistrate Judge, [Doc. #22], recommending that petitioner Ward Jackson's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and dismissed with prejudice. Jackson filed objections to the recommendation, [Doc. #23], and the state filed a response. [Doc. #24]. For the following reasons, the Magistrate Judge's Report and Recommendation [Doc. #22] is **ADOPTED IN PART and REJECTED IN PART.**

### I. BACKGROUND

Jackson attacks his 2005 conviction for second-degree murder in the Sixth Judicial District Court in and for Madison Parish, Louisiana, a crime for which he was sentenced to life imprisonment without the possibility of parole. *Id.* at 1. He names as respondent N. Burl Cain, the Warden of Louisiana State Penitentiary in Angola, Louisiana, where Jackson is currently incarcerated. *Id.* Jackson's application raises eight assignments of error. In assignment of error number seven, Jackson argues that he was denied his right to effective assistance of counsel under the Sixth Amendment. One of Jackson's grounds of ineffective assistance involves statements made by

1

defense counsel, Raymond Cannon, during voir dire, when Mr. Cannon repeatedly informed the entire venire of prospective jurors that Jackson was on parole for attempted aggravated rape at the time of the murder for which he was being tried. *Id.* at 22–25. Jackson argues that this information would never have been revealed to the jury were it not for Mr. Cannon's statements, because Jackson did not testify and never intended to testify. *Id.* According to Jackson, the unnecessary revelation of his prior conviction and parole status may have resulted in the jury pre-determining his guilt on the instant murder charge. *Id.*

Because this claim was presented to and rejected by a state court on post-conviction review, the Magistrate Judge recommends that Jackson's claim be denied due to the considerable deference owed to state adjudications of ineffective-assistance claims. [Doc. #22, pp. 22–25]. Having conducted a de novo review of the record and the applicable law, the court rejects that recommendation, and finds that, even under the considerable deference owed, the state post-conviction court's adjudication of Jackson's voir dire claim was unreasonable. Therefore, habeas relief is warranted on this claim.

## II. LAW & ANALYSIS

### A. Counsel Rendered Ineffective Assistance

To prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel's actions fell below an objective standard of reasonableness; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In assessing the first prong, courts should not second-guess counsel's performance based on "the distorting effects of hindsight," but instead should presume that counsel's actions are encompassed within the wide range of reasonable competence and fall under

2

the ambit of trial strategy. *Id.* at 689. Stated differently, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

In order to establish prejudice, the second prong of *Strickland*, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "To establish prejudice under *Strickland*, a defendant must show that his attorney's errors were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994) (citing *Lockhart v. Fretwell*, 504 U.S. 364, 369 (1993)).

The prejudice caused by counsel's revelation of Jackson's criminal history during voir dire is manifest. In questioning the very first panel of prospective jurors—in front of the entire venire—Mr. Cannon immediately called attention to his client's criminal history and parole, stating as follows:

> Now, see, Mr. Ward Edward Jackson, he is on parole. This is real. He is on parole. He is paroled out. That's right. So, we all have circumstances. We all have issues, as the songwriters say. We all got issues. But, as jurors now, you are supposed to follow the law. And that doesn't have anything to do with it, your past. No, it doesn't because Mr. Jackson now is on trial for one crime. And, that crime is what? Second degree murder.

[Doc. 13-4, p. 118, ll. 18–27]. A few minutes later, Mr. Cannon reminded the jurors that:

> [A]s I said, Mr. Jackson is on parole. That's right. He was placed on parole. He done a lot of time. That's right. Now. Because he's on parole, would that cause any one of

3

>you to say, well, he must have done something, or he must have killed him. Do any one of you believe that? That since Mr. Jackson is on parole, that he must have done it, that he must have done something? Let us know. Raise your hand. Because Mr. Jackson just wants to be treated fair.

*Id.* at 122, ll.12–20. Just before he finished questioning the first panel, Mr. Cannon brought up Jackson's paroled status a third time. *Id.* at 125, ll. 9–12.

When questioning the second panel, Mr. Cannon went even further. This time, he not only stated that Jackson was on parole, but specified that Jackson was on parole for attempted aggravated rape. [Doc. #19-4, pp. 34–35]. The revelation of the nature of Jackson's prior crime caused two prospective jurors to immediately and explicitly state that they would have problems being fair or impartial. Those exchanges proceed as follows:

>Raymond Cannon: Were you out there this morning? Because, Mr., you see Mr. Jackson is on parole
>
>Michael Bankston: Yeah. I heard that.
>
>Raymond Cannon: And, I talked to Mr. Jackson. I said, Mr. Jackson, you know, we may as well tell the jury all these things. And I'll tell you what he is on parole for. He is on parole for attempted aggravated rape. He paroled out. That's right. Is that going to make you a difference [*sic*], is that going to make you hold it up? If it is, let me know.
>
>Michael Bankston: How old was the individual?
>
>Raymond Cannon: We have to wait and give you that probably later. Is that going to make a difference?
>
>Lillie Volmer: It's going to make a difference to me.
>
>Raymond Cannon: See, that's why I'm saying that. So, we want to know.
>
>Michael Bankston: It will make a difference to me how old they are. If they are young, it would make a difference.

> Raymond Cannon: That's right, so, you see, all those things make a difference. That's why you tell the folks up front. We don't pull punches. I don't. You need to know those things. So, if any one of you would hold it against Mr. Jackson, Ward Jackson, because he's on parole, paroled out, he did some time for attempted aggravated rape. Is that a problem?
>
> Lillie Volmer: A big problem.

[Doc. #19-4, pp. 34–35., ll. 8–11]. Assistant District Attorney Anita Mack then revisited the issue with potential jurors Volmer and Bankston:

> Anita Mack: Okay. And Mrs. Volmer, this question is for you. With attempted aggravated rape that Mr. Cannon was talking about, if that aggravated rape had nothing to do with this charge that we are here for today and the evidence that is presented showed that he was not guilty, would you vote not guilty?
>
> Lillie Volmer: The man that raped my niece, he was out on work release, after killing a seventeen year old boy. He ended up walking away from there on his work release, and then raping and almost killing my niece. I'm very emotional about raping. He was let out because of rape.
>
> Anita Mack: Okay. Thank you. Mr. Bankston, could you be fair and impartial?
>
> Michael Bankston: Yes ma'am, I could be fair.

[Doc. #19-4, pp. 37–38, ll.18–3]

Mr. Cannon later challenged Ms. Volmer for cause based on her responses, claiming that she could not be fair or impartial. *Id.* at 44, ll. 9-17. At a sidebar, presiding Judge Michael Lancaster then expressed his concern over Mr. Cannon's decision to bring up Jackson's earlier conviction, stating as follows:

> Mr. Cannon, that would never have come out if you hadn't mentioned it. And, I don't want you to taint these other jurors by bringing up something that is really not admissible at trial.

*Id.*, ll. 19–22. After making this statement, Judge Lancaster sustained counsel's challenge and struck Ms. Volmer for cause. *Id.,* ll. 27–31. As to Mr. Bankston, there was never any further discussion of his stated concerns regarding the rape victim's age. Neither side challenged Mr. Bankston as a potential juror, and he ultimately was selected served on the jury. *Id.* at 44–45, ll. 32–13.

On the second day of voir dire, Mr. Cannon, ignoring Judge Lancaster's previous admonition, mentioned Jackson's prior conviction and parole three more times. [Doc. #19-5, pp. 26, 27, 31]. Again, Mr. Cannon called specific attention to the fact that Jackson stood convicted of attempted aggravated rape:

| | |
|---|---|
| Raymond Cannon: | And, Ms. Rachel, does it cause you any problem to sit on this jury? Now, Mr. Jackson is on parole. Now, let me say this to you, Mr. Jackson, – was found guilty of a rape years ago, an attempted rape. But, he paroled out. Would that present problem [*sic*] for you? |
| Rachel Warren: | No, sir. |
| Raymond Cannon: | I have to tell you these things. We are not pulling any punches. It is best not to. We are letting you know this. We're talking about a second degree murder in this case, nothing else. |

*Id.* at 31, ll. 2–14. Once again, Mr. Cannon made these statements in the presence of all remaining prospective jurors.

After a three-day trial the trial, the jury found Jackson guilty of second-degree murder. [Doc. #19-2, pp. 87–90]. The jury deliberated for over two hours, and voted to convict Jackson by a vote of ten to two, the fewest number of guilty votes allowed to obtain a conviction under Louisiana law. *Id.*; *see also* La. Code Crim. Proc. art. 782(A). During the course of trial, the jury heard testimony from eighteen witnesses. [Doc. #19-3, pp. 62–63]. However, as expected, Jackson

himself did not take the stand, and his prior conviction was never again mentioned after voir dire. Thus, the jury was only made aware of Jackson's prior conviction—and the fact that the prior conviction was for the particularly heinous crime of attempted aggravated rape—as a result of Mr. Cannon's decision to repeatedly draw attention to these facts during voir dire.

The danger of introducing evidence of prior crimes in a criminal case cannot be overstated. As the United States Supreme Court noted in *Old Chief v. United States*, the introduction of prior-crimes evidence presents the risk of "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." 519 U.S. 172, 180–81 (1997). Both the Federal and Louisiana Rules of Evidence recognize the potential for unfair prejudice caused by introducing prior-crimes evidence, and provide that such evidence is generally inadmissible. *See* Fed. R. Evid. 404(b)(1); La. Code Evid. Ann. art. 404(B)(1). Prior-crimes evidence may only be introduced in certain enumerated circumstances, and the prosecution must provide to the accused notice of its intent to introduce such evidence before trial, so that the defendant has an opportunity to object or request that the court rule on its admissibility. *Id.*

Although the prosecution did provide the defense a notice of intent to introduce evidence of Jackson's criminal history, [Doc. #19-2, p. 3], it does not appear that the issue was ever discussed again until Mr. Cannon brought it up during voir dire. The only possible justification for revealing Jackson's prior conviction would be if Mr. Cannon planned on Jackson taking the stand. If that were the case, it could be argued that Mr. Cannon strategically revealed the prior convictions during voir dire in order to identify and attempt to remove unfavorable jurors. Several courts have concluded that

such a strategy is reasonable when there is a substantial likelihood that the defendant will testify and thus be subject to cross examination. *See, e.g., Davidson v. Johnson,* 180 F.3d 260, 1999 WL 274317 at *3(5th Cir. 1999); *McFarland v. Cain*, 2012 WL 1089598 at *10–*11 (E.D. La. 2012); *Richard v. Rogers*, 555 F. Supp. 2d 652, 559–60 (M.D. La. 2008); *Davis v. Dretke*, 2006 WL 1662956 at *6–*7 (S.D. Tex. 2006); *McCullough v. Dretke*, 2004 WL 2921834 at *6–*8 (N.D. Tex. 2004); *Andrews v. Cain*, 71 F. Supp. 2d 560, 568 (E.D. La. 1999). Here, by contrast, there is no indication that Jackson was ever going to testify. Jackson alleges that Mr. Cannon never prepared Jackson for direct testimony or, more importantly, for the questions Jackson would likely be asked during cross examination. [Doc. #1-2, pp. 33–34; Doc. #23, pp. 15–16]. The State never discusses Jackson's contentions, but instead argues that Jackson cannot establish that the jury's awareness of his prior crime resulted in prejudice. The court declines to overlook the egregious nature of defense counsel's statements during voir dire or the deleterious effect the statements had on the trial. Accordingly, based on the fact that Jackson never testified and on the unrebutted assertion that he had never been prepared to testify, the court finds that Mr. Cannon's decision to reveal Jackson's prior conviction fell below an objective standard of reasonableness. Where, as here, there is little to no likelihood that the prior crimes will be introduced at trial, it is unreasonable for defense counsel to preemptively raise the issue during voir dire in order to purge unfavorable jurors. Such a tactic negates the strict rules applicable to the admissibility of sensitive prior-crimes evidence and unnecessarily taints the jury.

    The State argues that Jackson cannot show prejudice because the evidence on the murder charge was so strong that he would have been convicted whether the prior crime had been revealed or not. [Doc. #24, p. 2]. The State ignores the possibility that the jury's awareness of Jackson's prior

crime was a factor in the jury's narrow verdict. In a sidebar, the Judge Lancaster acknowledged that counsel's actions were highly problematic, warning counsel that he was "taint[ing] these other jurors by bringing up something that is really not admissible at trial." [Doc. #19-4, p. 44, ll. 19–22]. The jury deliberated in this matter for over two hours, and entered a guilty verdict with the minimum number of necessary votes. [Doc. #19-2, pp. 87–90]. The likelihood that the ten-member majority was affected by their knowledge of Jackson's prior crimes is too great to ignore. It must be remembered that one of the jurors, Michael Bankston, admitted during voir dire that his impartiality might be affected by the facts of Jackson's conviction for attempted aggravated rape. It is entirely plausible that Mr. Bankston—or any other juror, for that matter—was biased by the mere knowledge of Jackson's prior conviction. This bias may have been the deciding factor of any one of the ten jurors who voted to find Jackson guilty of second-degree murder. Thus, the court finds that Jackson has carried his burden of demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**B. The State Court's Adjudication of Jackson's *Strickland* Claim was Unreasonable**

The court recognizes that, because Jackson's ineffective-assistance claim was presented to and rejected by a state court on post-conviction review, the court must do more than simply disagree with the state court's ruling. When the state court has adjudicated an ineffective-assistance claim on the merits, federal habeas review of that claim is governed by 28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA amended 28 U.S.C. § 2254(d) to provide that a federal court may not grant relief unless a state court's adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The interplay between the AEDPA and *Strickland* results in "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). As the Supreme Court instructed in *Harrington v. Richter*:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.... A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. 86, 101 (2011). Consequently, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* at 102. Rather, in order to obtain *habeas* relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well-understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id.* at 103.

Here, the state court disposed of Jackson's claim in a single short paragraph, finding as follows:

> The perfect opportunity to purge unfavorable jurors from the panel is during voir dire examination. It is the defense counsel's duty to gather enough information to exercise challenges intelligently. It was conceivable that the defendant's parole status would come to light during the trial. It was certainly reasonable trial strategy on the part of defense counsel to bring the defendant's past criminal history to light during the voir dire examination in order to determine if the potential jurors could view the testimony fairly and impartially. Such strategy is certainly no indication of ineffective counsel.

[Doc. #7-3, pp. 20–21].

The state court's adjudication of Jackson's voir dire claim was unreasonable under the meaning of *Harrington*. In finding that it was a reasonable trial strategy to reveal defendant's prior conviction because it was "conceivable that defendant's parole status would come to light," the state court ignored the stringent rules regarding admissibility of prior-crimes evidence and Jackson's unrebutted allegation that he was never intended to take the stand. There can be no fairminded disagreement with the proposition that counsel's strategy of calling attention to his own client's criminal history, in front of the entire venire, should be based on more than a hypothetical eventuality. The state court further failed to consider that it was not only Jackson's parole status that was revealed, but also that the fact that Jackson's conviction was for attempted aggravated rape, a completely unnecessary specification that, in all likelihood, negatively colored the jurors' perceptions of Jackson. For these reasons, the court readily concludes that the state court's application of the *Strickland* standard to Jackson's voir dire claim was objectively unreasonable, in that the adjudication of the claim was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, habeas relief is warranted.

## C. Relief

Having found that Jackson is entitled to a writ of habeas corpus, the court must determine the appropriate relief to grant. Courts should dispose of a meritorious habeas petition "as law and justice require." 28 U.S.C. § 2243. The court has "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). The typical federal habeas relief granted in a non-capital case is a conditional order of release. *Herrera v. Collins*, 506 U.S.

390, 403 (1993). A conditional order requires the state to release the petitioner unless the state takes some remedial action, such as a new trial or new sentencing hearing. *See id.*; *Jennings v. Stephens*, 135 S. Ct. 793, 803 (2015) (Thomas, J., dissenting) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 86–87 (2005)); *see also* Brian R. Means, Federal Habeas Manual: A Guide to Federal Habeas Corpus Litigation §13:12, 1313–16 (2013).

The court concludes that the state should be afforded the opportunity to remedy Jackson's unconstitutional conviction by holding a new trial. Therefore, the court will issue a conditional writ, ordering that Jackson be released from custody unless the State initiates retrial proceedings within one-hundred twenty (120) days from the date that this court's judgment becomes final. *See* La. Code Crim. P. art. 701(d)(1)(a).

### III. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the Magistrate Judge's Report and Recommendation, [Doc. #22], be and is hereby **ADOPTED IN PART and REJECTED IN PART**, as follows:

The court agrees with the Magistrate Judge's conclusions regarding claims 1, 2, 3, 4, 5, 6, 7(B), 7(C), 7(D), and 8. Accordingly, **IT IS ORDERED** that those claims be and are hereby **DENIED and DISMISSED, WITH PREJUDICE**;

The court rejects the Magistrate Judge's conclusion regarding claim 7(A), and finds that counsel's actions during voir dire amounted to a denial of Jackson's Sixth Amendment right to effective assistance of counsel. Accordingly, with respect to this claim, **IT IS ORDERED** that Jackson's application for a writ of habeas corpus be and is hereby **GRANTED**;

IT IS FURTHER ORDERED that Jackson be and is hereby **GRANTED** a **CONDITIONAL WRIT** of habeas corpus, such that Jackson shall be released from custody unless the State initiates retrial within one-hundred twenty (120) days from the date of that this court's judgment becomes final; and

IT IS FURTHER ORDERED that counsel for the respondent shall promptly notify the Sixth Judicial District Court, Madison Parish, Louisiana, of this court's order necessitating retrial.

THUS DONE AND SIGNED, in chambers, in Shreveport, Louisiana, this 11th day of August, 2015.

**DONALD E. WALTER**
**UNITED STATES DISTRICT JUDGE**